Filed 2/28/25  P. v. Thomas CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CLAUDE HERMAN THOMAS,<br><br>Defendant and Appellant. | B334285<br><br>(Los Angeles County<br>Super. Ct. No. TA128810) |

APPEAL from an order of the Superior Court of Los Angeles County, Kelvin D. Filer, Judge.  Reversed and remanded with instructions.

Jonathan Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Roberta L. Davis, Deputy Attorneys General, for Plaintiff and Respondent.

In 2014, appellant Claude Thomas pled no contest to one count of attempted murder and admitted as true the allegation that he personally used and discharged a firearm in violation of Penal Code section 12022.53, subdivision (c).[1]  In 2023, appellant filed a petition for resentencing under section 1172.6 (former section 1170.95).[2]  The trial court summarily denied the petition without appointing counsel or allowing briefing.  The court found that appellant was ineligible for relief as a matter of law because the record established that he was prosecuted as the actual shooter.

The parties agree that the court erred by denying appellant's petition without appointing counsel, ordering briefing, or holding a hearing as to whether he had established a prima facie case for relief.  However, respondent Attorney General contends the error was harmless.  Appellant argues that the error was prejudicial because the trial court relied on inadmissible evidence in the preliminary hearing transcript.  We agree with appellant.  We therefore reverse the trial court's order and remand with directions to appoint counsel for appellant and conduct the prima facie inquiry required by section 1172.6, subdivision (c).

## FACTUAL BACKGROUND

Because appellant did not proceed to trial, the relevant facts considered by the trial court were drawn from the transcript

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

[2]     Effective June 30, 2022, the Legislature renumbered section 1170.95 to section 1172.6. (Stats. 2022, ch. 58, § 10.) There were no substantive changes to the statute. We hereafter refer to the statute as section 1172.6.

2

of appellant's preliminary hearing.  We summarize this evidence here, keeping in mind that appellant has challenged the propriety of the court's reliance on the preliminary hearing transcript for purposes of making a prima facie determination under section 1172.6.

The preliminary hearing included testimony from a single witness, officer Scott Wilhelm of the Los Angeles Police Department (LAPD).  Wilhelm testified that on January 21, 2013, he and his partner responded to assist LAPD officers Loomis and Gastelum in a traffic stop of possible shooting suspects.  Earlier, Loomis and Gastelum were in a parking lot at 108th Street and Spring Street in Los Angeles when they reported hearing gunshots. As they drove in the direction of the sound, they observed and then began following a green minivan.  After driving several blocks, the minivan pulled into a driveway on 104th Street, and Loomis and Gastelum conducted a traffic stop. Wilhelm and his partner arrived at the location shortly afterward.  When they arrived, the two occupants of the minivan were out of the vehicle and had been placed on the ground. Wilhelm identified one of the occupants as appellant.

While at the traffic stop, Wilhelm and his partner received a radio call for a shooting investigation several blocks away. They responded and spoke with Jamal Harris, who told them that a short time earlier, he was walking on 107th Street when a green minivan approached him.  The minivan slowed and the passenger said something that Harris could not discern.  The passenger then reached out of the vehicle with a gun in his hand and fired approximately 10 shots at Harris.  Harris dove to the ground and avoided being hit.

Wilhelm brought Harris to the 104th Street location to conduct a field identification. As they approached, Harris immediately identified the green minivan as the vehicle that was involved in the shooting. Harris then identified appellant as the minivan's passenger who shot at him, and identified the other suspect, co-defendant James Dunn, as the driver.

Additionally, Wilhelm reviewed video surveillance footage of the shooting captured by a homeowner on 107th Street. As Wilhelm described the footage to the court, it showed victim Harris walking on 107th Street and a green minivan approaching. The minivan slowed (Wilhelm estimated it was travelling five to 10 miles per hour), and a black male individual in the passenger seat extended his body outside of the vehicle with his arm out, holding a black object consistent with a semiautomatic handgun. Wilhelm testified that he heard multiple gunshots on the video and then saw Harris dive to the ground.

Wilhelm also testified that Loomis reported that he had searched for a weapon along the path driven by the minivan. Loomis recovered a weapon in the gutter next to the sidewalk on 104th Street. No weapon was found inside the minivan.

During cross-examination, Wilhelm acknowledged that he did not personally see the minivan driving and did not see the suspects until they were out of the van. His understanding that appellant was the passenger was based on Harris's identification. He also testified that the surveillance video showed a black male individual shooting from the minivan, but he could not identify a specific individual from the video.

4

## PROCEDURAL HISTORY

### I.    Conviction and Sentence

Appellant was charged by amended information with one count of attempted willful, deliberate, and premeditated murder (§ 664/187, subd. (a)), with allegations that he personally and intentionally discharged a firearm (§ 12022.53, subd. (c)) and personally used a firearm (§ 12022.53, subd. (b)), and one count of assault with a firearm (§ 245, subd. (a)(2)), with personal use allegations (§§ 1203.06, subd. (a)(1), 12022.5, subd. (a)).  The amended information also alleged that appellant suffered several prior serious felony convictions and prior prison terms.[3]

In January 2014, during jury selection, appellant pled no contest to attempted murder, without the allegations that it was willful, deliberate, and premeditated. He also admitted the allegation that he personally discharged a firearm in violation of section 12022.53, subdivision (c).  Defense counsel joined in the plea and stipulated to a factual basis for the plea based on the arrest reports and preliminary hearing transcript pursuant to *People v. West* (1970) 3 Cal.3d 595.  The court found a factual basis for the plea and accepted appellant's [4]

The superior court sentenced appellant to five years in state prison on the attempted murder count, plus 20 years for the personal use enhancement.  The court dismissed the remaining charges and allegations pursuant to the plea agreement.

---

[3]    Dunn was charged with attempted murder and assault with a firearm, but without the personal use allegations.  As to both defendants and both counts, the amended information further alleged that a principal was armed with a firearm (§ 12022, subd. (a)(1)).

[4]    Dunn pled no contest to assault with a firearm.

5

Appellant appealed, arguing that his counsel rendered ineffective assistance and pressured him into accepting a plea deal. A different panel of this court concluded that appellant could not raise that issue without obtaining a certificate of probable cause and affirmed the judgment. (*People v. Thomas* (June 9, 2015, B256255) [nonpub. opn.].)

## II.    Section 1172.6 Proceedings

Appellant filed a section 1172.6 petition in July 2023. He submitted his own typed petition rather than using a form. He alleged that he had accepted a plea offer in lieu of trial at which he could have been convicted of attempted murder, and that he could not presently be convicted of attempted murder because of changes to the relevant laws. He also requested appointment of counsel. Appellant included a declaration stating that he was not a major participant in the shooting because he was not present, and challenging the victim's identification of him as the shooter.

The court summarily denied appellant's petition on August 1, 2023 without appointing counsel or ordering briefing. The court cited appellant's plea as well as evidence presented at the preliminary hearing "that the petitioner was the passenger in the suspect vehicle, and it was clearly the passenger who fired the weapon. Petitioner was identified as 'the shooter' and it was verified via a video of the incident!" The court therefore found that appellant was ineligible for relief as a matter of law, explaining that appellant's "plea, . . . conviction, and the sentence imposed reflects that the petitioner was the actual shooter. The record is clear that he was prosecuted as being the direct perpetrator and not on a theory of aiding and abetting or a theory of natural and probable consequences."

Appellant timely appealed.

6

# DISCUSSION

## I. Governing Law

Effective January 1, 2019, the Legislature "'amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.'" (*People v. Curiel* (2023) 15 Cal.5th 433, 448 (*Curiel*), quoting Stats. 2018, ch. 1015, § 1(f).) As amended, section 188, subdivision (a)(3) now provides that "in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) Section 189 now provides that a participant in qualifying felonies during which a death occurs generally will not be liable for murder unless (1) he or she was "the actual killer," (2) he or she, "with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree," or (3) he or she "was a major participant in the underlying felony [who] acted with reckless indifference to human life." (§ 189, subds. (e)(1)-(3); accord, *People v. Wilson* (2023) 14 Cal.5th 839, 868–869 (*Wilson*).)

A person convicted of murder or attempted murder under a now-invalid theory may petition the trial court under section 1172.6 to vacate the conviction and be resentenced on any remaining counts. (§ 1172.6, subd. (a).)[5] The statute requires the

---

[5] Effective January 1, 2022, Senate Bill No. 775 (2020–2021 Reg. Sess.) amended section 1172.6 in various respects, including "to clarify that 'persons who were convicted of attempted murder

7

petition to include a declaration by the petitioner that he or she is eligible for relief, certain case information, and whether the petitioner requests appointment of counsel. (§ 1172.6, subd. (b)(1).)

Upon receipt of a facially sufficient petition, the trial court "shall appoint counsel" for petitioner if requested. (§ 1172.6, subd. (b)(3).) The court must allow for further briefing by the parties and then "shall hold a hearing to determine whether the petitioner has made a prima facie case for relief." (§ 1172.6, subd. (c).)

The court may consider the record of conviction in determining whether the petitioner has made a prima facie case for relief under section 1172.6. Although the court should not engage in factfinding at the prima facie stage, "'if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'" (*People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*).) If the petition and record in the case establish conclusively that the petitioner is ineligible for relief, the court may dismiss the petition. (See *ibid*.; § 1172.6, subd. (c).)

If the petition states a prima facie claim for relief, the court must issue an order to show cause and hold an evidentiary hearing. At the evidentiary hearing, "the prosecution bears the burden 'to prove, beyond a reasonable doubt, that the petitioner

---

. . . under . . . the natural and probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theor[y].'" (*People v. Whitson* (2022) 79 Cal.App.5th 22, 30.)

8

is guilty of murder or attempted murder'" under current law. (*Wilson*, *supra*, 14 Cal.5th at p. 869; § 1172.6, subd. (d)(3).)

We review de novo whether the trial court properly denied appellant's section 1172.6 petition without issuing an order to show cause. (*People v. Coley* (2022) 77 Cal.App.5th 539, 545; *People v. Harrison* (2021) 73 Cal.App.5th 429, 437.)

## II.   Analysis

Appellant contends that the trial court erred in failing to appoint counsel upon receipt of his facially valid petition. Respondent agrees, as do we. The court was required to appoint counsel for appellant, allow briefing by the parties, and hold a hearing to assess whether appellant established a prima facie claim for relief. (§ 1172.6, subds. (b)(3), (c); *Lewis*, *supra*, 11 Cal.5th at p. 957.) Denying appellant's petition without meeting these requirements was error.

These errors are subject to harmless error analysis under *People v. Watson* (1956) 46 Cal.2d 818, 836. (*Lewis, supra*, 11 Cal.5th at pp. 957–958 [failure to appoint counsel under § 1172.6, subd. (b)(3) is "state law error only, tested for prejudice under [*Watson*]"], 974.) Thus, reversal is required only if appellant can show a reasonable probability that, absent the error, his petition would not have been summarily denied. (See *id.* at pp. 972–974; *People v. Daniel* (2020) 57 Cal.App.5th 666, 676.) Conversely, the error is harmless if the record of conviction refutes appellant's prima facie showing and establishes as a matter of law that he is not entitled to relief. (See *Lewis*, *supra*, 11 Cal.5th at pp. 971-974; *People v. Harden* (2022) 81 Cal.App.5th 45, 47-48.)

Respondent contends that the errors were harmless because the amended information, plea, and preliminary hearing transcript establish that appellant was the actual shooter and

9

thus ineligible as a matter of law.  Both respondent and the trial court relied on evidence from the preliminary hearing transcript to establish that appellant was prosecuted as the actual shooter and therefore ineligible for relief as a matter of law.  Appellant's contention that the trial court erred in relying on the preliminary hearing transcripts is two-fold. First, appellant contends the transcript contained inadmissible hearsay that could not support a finding of ineligibility.  Second and more generally, he argues that the trial court was not entitled to rely on any portion of a preliminary hearing transcript, as it would require impermissible factfinding at the prima facie stage.  We agree with appellant's first contention and therefore need not reach the second.

Whether and to what extent a court may rely on a preliminary hearing transcript to deny a petition at the prima facie stage is currently under review by the California Supreme Court in *People v. Patton*, S279670.  We need not decide that broader issue, because here the preliminary hearing transcript contained almost no admissible evidence to conclusively establish that appellant was the only shooter.

At a section 1172.6 evidentiary hearing, the admissibility of evidence is governed "by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed." (§ 1172.6, subd. (d)(3).)  However, "hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless

the evidence is admissible pursuant to another exception to the hearsay rule."  (§ 1172.6 (d)(3).)[6]

We note that section 1172.6, subdivision (d)(3) specifically prohibits the use of such hearsay evidence during a section 1172.6 *evidentiary* hearing.  Given this statutory restriction on the use of hearsay testimony for purposes of proving facts at the evidentiary hearing, it is unclear "how such evidence could establish, as a matter of law a petitioner's ineligibility for resentencing at the prima facie stage." (*People v. Flores* (2022) 76 Cal.App.5th 974, 988; accord *People v. Williams* (2024) 103 Cal.App.5th 375, 397, fn. 11, review granted, S286314 [hearsay testimony introduced at the preliminary hearing under section 872, subdivision (b) "is likewise inadmissible to determine a petitioner's eligibility for resentencing pursuant to section 1172.6"]; see also *People v. Patton* (2023) 89 Cal.App.5th 649, 652, fn. 2, review granted, S279670 [disregarding testimony admitted at preliminary hearing under § 872, subd. (b)].)

Here, virtually none of the testimony at the preliminary hearing would be admissible under section 1172.6, subdivision (d)(3).  Testifying officer Wilhelm did not have any personal knowledge that appellant was the passenger of the minivan, of the details of the shooting, or the recovery of the weapon. Thus, this evidence was hearsay and only admitted at the preliminary hearing pursuant to section 872, subdivision (b).  Notably, respondent makes no effort to establish that any of this evidence was admissible under another hearsay exception.  As such, the

---

[6]     Section 872, subdivision (b) permits a law enforcement officer to testify at a preliminary hearing as to "statements of declarants made out of court offered for the truth of the matter asserted."

only preliminary hearing testimony establishing that there was a single shooter and identifying appellant as that shooter was inadmissible hearsay.

Thus, even if the preliminary hearing transcript could otherwise properly be relied upon as part of the record of conviction at the prima facie stage, the preliminary hearing transcript in this case almost entirely consists of inadmissible hearsay.  The trial court erred in relying on this evidence to find that the record conclusively established that appellant was the actual shooter and the direct perpetrator of the attempted murder.

As such, we conclude that the trial court's failure to comply with the requirements of section 1172.6, subdivisions (b) and (c) was not harmless and requires remand.  We will not, however, direct the trial court to issue an order to show cause and hold an evidentiary hearing, as appellant requests.  Because the court failed to appoint counsel for appellant and received no briefing or argument from the parties, the record does not demonstrate the court made an adequate inquiry concerning whether appellant's petition establishes a prima facie case for relief under section 1172.6, subdivision (c).  We decline to perform this statutorily mandated task for the first time on appeal.[7]

We reverse the order denying appellant's petition, with directions to the trial court to appoint counsel for appellant and proceed as required pursuant to section 1172.6, subdivision (c). We express no view as to whether the court ultimately should

---

[7]     We also note that the Supreme Court's forthcoming decision in *Patton* should provide further guidance on  the trial court's ability to rely on the preliminary hearing transcript.

12

determine that appellant has established a prima facie case for section 1172.6 relief.[8]

## DISPOSITION

The order denying appellant's section 1172.6 petition is reversed, and the matter is remanded with directions that the trial court appoint counsel and perform the prima facie inquiry required by section 1172.6, subdivision (c).

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, J.

I concur:

MORI, J.

---

[8] In light of our conclusion, we need not address appellant's additional arguments that the trial court's summary denial of his section 1172.6 petition violates his state and federal due process rights.

CURREY, P. J., Dissenting.

Because I see this case differently than my colleagues, I respectfully dissent.

"The record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the courts to distinguish petitions with potential merit from those that are clearly meritless." (*People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*).) Because Thomas's record of conviction conclusively demonstrates his petition is meritless, I would affirm.

As Presiding Justice Gilbert of this Court's Division Six recently noted (also in dissent): "Where a defendant pleads no contest to attempted murder, admits that he intentionally discharged a firearm, and is the sole and actual shooter, he is ineligible for resentencing." (*People v. Alazar* (2024) 105 Cal.App.5th 1100, 1112, review granted December 31, 2024, S287917 (dis. opn. of Gilbert, J.).) That description fits Thomas.

The only petitioners potentially eligible for relief under section 1172.6 are those who "could not presently be convicted of murder or attempted murder" based on the changes to Penal Code sections 188 and 189, which eliminated imputed-malice theories of murder. (§ 1172.6, subd. (a)(3).) The question, therefore, is whether Thomas has shown he was convicted under an imputed malice theory that has since been rendered invalid. (*Id.*at subd. (a)) He has not made and cannot make that showing.

It is irrefutable that the prosecution proceeded at the preliminary hearing on the theory that Thomas committed attempted murder as the actual shooter in a drive-by shooting, rather than on an imputed-malice theory. As the majority notes,

1

the preliminary hearing included testimony from a single witness, Officer Scott Wilhelm of the Los Angeles Police Department. In response to questions from the prosecutor, Wilhelm testified that Jamal Harris, the victim of the attempted murder, told Wilhelm that Thomas was the shooter, and that the other suspect, co-defendant James Dunn, was the driver.

After the preliminary hearing, Thomas pled no contest to attempted murder and admitted he personally discharged a firearm in violation of section 12022.53, subdivision (c). This is consistent with the prosecution theory that Thomas was the shooter and his co-defendant Dunn was the driver in the drive-by shooting. No personal use firearm allegation was brought against Dunn, which also is consistent with the prosecution theory.

The majority contends that because Wilhelm's testimony consisted almost entirely of hearsay, it cannot be used to ascertain the prosecution's theory, supposedly because that would require us to accept the testimony for its truth. Not so. We can tell from the charges brought, as well as the questions posed and answers given during the prosecutor's questioning of Wilhelm that the prosecutor's theory was that Thomas was the shooter.

Theories of prosecution are neither true nor false. And we need not accept the truth of Wilhelm's testimony to identify the theory of prosecution. "'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a).) But the hearsay doctrine is not implicated when an out-of-court statement is "not received

2

to prove the truth of a fact it asserts." (*People v. Sanchez* (2016) 63 Cal.4th 665, 681.)

So, although Wilhelm's testimony currently is inadmissible for its truth under the plain language of section 1172.6, subdivision (d)(3), it nonetheless is admissible for a valid non-hearsay purpose at the prima facie stage of these proceedings. That valid purpose is to ascertain that the legal theory under which Thomas was charged with (and pled guilty to) attempted murder was not one that is now prohibited; i.e.; Thomas was not prosecuted under an imputed-malice theory of liability.

Because the testimony of Officer Wilhelm is admissible for that valid non-hearsay purpose, and because it shows Thomas pled to attempted murder on the theory that he was the actual shooter, the record demonstrates Thomas is ineligible for section 1172.6 relief as a matter of law. And because the record demonstrates ineligibility as a matter of law, it was harmless error for the trial court not to appoint counsel on Thomas's behalf or allow briefing. (See *Lewis, supra,* 11 Cal.5th at pp. 972-974 [reversal is warranted only if the appellant can show a reasonable probability that, absent error, his petition would not have been summarily denied].)

For these reasons, I would affirm the trial court's order denying relief.

CURREY, P. J.

3